**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

JULIAN TORREZ,

        Plaintiff,

v.                                                       No. CIV 01-720 BB/LCS

JUAN JULIAN, Sheriff of Valencia County, in
his official and individual capacities, LT.
DAVE CARR, an employee of the Valencia
County Sheriff's Office, in his official and
individual capacities, and SGT. RICHARD
PEREA, an employee of the Valencia County
Sheriff's Office, in his official and individual
capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of three motions: (1) Plaintiff's second motion for summary judgment (Doc. 67); Defendants' motion to dismiss Plaintiff's defamation or other state-law claim (Doc. 34); and Defendants' motion for summary judgment (Doc. 65). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiff's second motion for summary judgment will be denied; Defendants' motion to dismiss the state-law defamation claim will be granted in part and denied in part; and Defendants' motion for summary judgment will be granted in part and denied in part.

Plaintiff is employed by the Valencia County Sheriff's Department as a deputy. This § 1983 case arises because during Plaintiff's tenure with the Department, he has been disciplined a number of times and transferred to a "dead-end" position as a court security officer. He has also been subjected to informal punishment that does not seem to fit the usual definition of "discipline,"

including one memorable incident in which Plaintiff's police vehicle was picked up by other officers and parked in the Sheriff's garage. Plaintiff was not told where the vehicle was, and was allowed for two days to believe it had been stolen. Plaintiff maintains that personal property worth $400 disappeared while the vehicle was being held by the Sheriff. Plaintiff also claims that most of the discipline and punishment imposed on him was done in retaliation for the fact that he had decided to be a candidate for sheriff, and would be opposing another member of the Department who was the incumbent Sheriff's hand-picked successor. Plaintiff alleges that the actions taken against him were trumped up in an effort to harm his reputation with the public and prevent him from winning the election. He has filed this lawsuit, raising federal claims under 42 U.S.C. § 1983 and a supplemental state claim for defamation.

Different standards govern this Court's consideration of the motion to dismiss and the motions for summary judgment. As to the motion to dismiss, this Court must accept the well-pleaded allegations of Plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. *Yousef v. Reno*, 254 F.3d 1214, 1219 (10th Cir.2001). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As to the summary-judgment motions, "[s]ummary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.,*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or

the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider the various motions in light of these standards, and address them separately.

**Motion to Dismiss**

Plaintiff's state-law defamation claim is based on his allegations that Defendants trumped up disciplinary actions against him, imposed discipline based on information they knew was false, and made public statements about Plaintiff and the disciplinary actions taken against him. Plaintiff alleges that Defendants took these actions in order to discredit him and his candidacy for sheriff. Defendants have moved to dismiss this claim, arguing that Defendants' immunity from such a claim has not been waived under the New Mexico Tort Claims Act, NMSA § § 41-4-1 *et seq.* ("TCA"). In other words, at this point at least, Defendants do not contest the adequacy of Plaintiff's complaint as to whether he has sufficiently alleged a defamation cause of action. Instead, Defendants maintain only that they are entitled to immunity from suit for the cause of action Plaintiff has alleged.

Public employees such as Defendants, who are acting within the scope of their duties, are immune from liability for any tort except to the extent such immunity is waived by the TCA. NMSA § 41-4-4(A). Defendants are all considered law enforcement officers under the TCA, and are therefore subject to the waivers of immunity found in NMSA § 41-4-12. Under that section, immunity is waived if a law enforcement officer causes personal injury or other injury "resulting from...slander, defamation of character..." or other specified wrongful acts. Plaintiff, therefore, relies on § 41-4-12 to argue that Defendants' immunity has been waived for his defamation claim. There

is one more provision of the TCA that is applicable in this situation, however, and it is this provision that forms the basis of Defendants' argument in favor of immunity.

According to NMSA § 41-4-21, the provisions of the TCA "shall not affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-employee relationship." Defendants contend that all of the defamatory acts alleged by Plaintiff occurred in the context of the employer-employee relationship between Plaintiff and the Sheriff's Department. Therefore, according to Defendants, the waiver of immunity found in § 41-4-12 cannot be used to waive Defendants' immunity for the employment-related defamation claim raised by Plaintiff in his complaint. Defendants maintain that employees of law enforcement agencies are not entitled to greater rights, such as the right to bring a defamation lawsuit following unfavorable disciplinary action, than their public-employee counterparts, simply because they work in the law-enforcement field.[1]

_____

[1]The Court has considered the option of declining to accept supplemental jurisdiction over the state-law defamation claim, because the interplay between § 41-4-21 and § 41-4-12 has not yet been addressed by a New Mexico appellate court. *See, e.g., Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998) (exercise of supplemental jurisdiction is discretionary with trial court; such jurisdiction may be declined if claim raises a novel or complex issue of state law); *Trump Hotels & Casino Resorts, Inc.*, 140 F.3d 478, 487 (3d Cir. 1998) (trial court did not abuse its discretion in declining to exercise supplemental jurisdiction over claim that state constitution had been violated by defendants' actions). In the interest of judicial economy and fairness to the parties, however, the Court has decided to retain supplemental jurisdiction over the claim. In this case, the application of § 41-4-21 appears to be fairly straightforward. Furthermore, the Court is well aware that its interpretation of § 41-4-21 has no binding impact on the New Mexico courts, and New Mexico's courts have not hesitated to reject federal case law construing New Mexico law. *See, e.g., Daddow v. Carlsbad Mun. Sch. Dist.*, 898 P.2d 1235, 1237-38 (N.M. 1995) (rejecting *Martinez v. Board of Educ.*, 748 F.2d 1393, 1396 (10th Cir. 1984), which had held that local New Mexico school boards are "arms of the state" for purposes of the Eleventh Amendment). The Court is not concerned, therefore, that this unpublished opinion will have a major impact on New Mexico law. The better course appears to be to retain the entire case and allow the parties to resolve this matter in one lawsuit rather than two.

To the extent Plaintiff's defamation claim is simply an attempt to attack the disciplinary actions taken by his superiors, and to obtain compensation for any harm caused by those actions, the Court agrees with Defendants. In the only case that has discussed § 41-4-21 at all, the New Mexico Court of Appeals held that the purpose of the section is to preserve employment relations in the public-employee context, and to disallow a claim for which immunity might otherwise be waived under the TCA, if the claim would affect personnel acts, rules, or regulations. *See Rubio v. Carlsbad Mun. Sch. Dist.*, 744 P.2d 919, 922 (N.M.App. 1987).

It appears there are several ways in which § 41-4-21 acts to preserve public employment law in New Mexico. First, if not for this provision, the TCA (interpreted broadly) could conceivably deprive public employees of any opportunity to obtain judicial review of demotions, firings, or suspensions imposed by their employers. The TCA would do this because of the broad grant of immunity found in § 41-4-4(A), combined with the lack of any other provision in the TCA specifically waiving immunity for employment decisions. As a result of § 41-4-21, however, the judicial-review rights of public employees are explicitly preserved, because the TCA can have no effect on those rights.[2] Another way in which § 41-4-21 appears to preserve employment relations, and one more pertinent to this case, is to prevent public employees from circumventing the normal disciplinary process by filing a lawsuit seeking tort recovery, based on the waivers of immunity found in the TCA. Public employees are limited to the remedies provided by ordinary labor law, such as the grievance

_____

[2]Some examples of the right to judicial review, created by statute or case law, include NMSA § 10-9-18(G), granting state employees the ability to appeal a decision of the personnel board to the district court for the district in which the employee resides; and the right of a municipal employee to proceed by writ of certiorari to obtain review of a decision made by the local personnel board. *Zamora v. Village of Ruidoso Downs*, 907 P.2d 182 (N.M. 1995).

processes established by local personnel ordinances,[3] in their attempts to challenge disciplinary actions taken against them. Put another way, § 41-4-21 makes clear that the legislature, in enacting the TCA and its waivers of immunity, did not intend to grant employees of law enforcement agencies the ability to substitute a tort remedy for the normal disciplinary process, an option not available to other public employees. All public employees, as well as public employers, remain unaffected by the TCA insofar as their employer/employee relationships are concerned. In sum, Plaintiff cannot, by bringing an action for defamation, obtain damages from Defendants based on the disciplinary actions taken by those Defendants. *See, e.g., Hatheway v. Board of Regents of the Univ. of New Mexico*, 1994 WL 732002 (D.N.M. 1994) (public employee's defamation claim, arising out of the termination of his employment, was subject to dismissal because there was no waiver of liability in the TCA for such a claim, despite the fact that plaintiff claimed such a waiver under § § 41-4-12 and -21). Instead, his challenges to those actions are limited to those remedies, if any, provided by the applicable personnel code or policies and procedures, as well as other provisions of law governing employer-employee relationships.

Plaintiff's defamation claim, however, as pled in the complaint, does not appear to be limited to a simple challenge to the various instances of discipline imposed on him by Defendants. Plaintiff alleges that Defendants made public statements concerning the trumped-up disciplinary actions, in an effort to damage his campaign for sheriff. The act of making false public statements about an employee is clearly separable from the act of imposing discipline upon the employee, and a defamation claim arising out of such public statements will not "affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-

---

[3]Other examples of a "provision of law governing the employer-employee relationship" that is to remain unaffected by the TCA would appear to include the state personnel code, the New Mexico Human Rights Act, and federal laws such as Title VII or the Americans with Disabilities Act.

employee relationship." § 41-4-21. Plaintiff may still be required to prove that the disciplinary actions were based on falsehoods in order to prevail on his claim that false statements about him were publicly disseminated. His defamation claim may therefore include an attack on the validity of those disciplinary actions. However, the crucial element of his claim will be the publication of the falsehoods in an attempt to damage his campaign, and he will not be allowed to recover damages simply because he was disciplined. In this sense, therefore, Plaintiff is in the same position as any member of the public who has been defamed by a law enforcement officer and who may bring a tort action, pursuant to the waiver of immunity found in § 41-4-12, against that officer. The result should not be different simply because the false information allegedly disseminated to the public in this case is related to Plaintiff's employment as a deputy.

Pursuant to the foregoing discussion, Plaintiff's defamation claim will be dismissed to the extent it is simply an attack on the various disciplinary actions taken against him by Defendants. To the extent it is based on his claim that false public statements were made in an effort to damage his campaign for sheriff, the defamation claim will not be dismissed.[4]

**Plaintiff's Second Motion for Summary Judgment**

Plaintiff's motion is based on the following undisputed facts: (1) Plaintiff's patrol unit, which belongs to Valencia County, was parked along a certain street at a time when Plaintiff was not on duty; (2) Defendant Sheriff Julian ordered a supervisory-level employee, Gary Hall, to retrieve the unit and bring it to Julian's home; (3) Hall and another employee of the Sheriff's Department,

---

[4]It should be noted that the Court's review of the deposition portions and other evidence submitted in connection with the summary judgment motions has not revealed any evidence that any named Defendant actually did disseminate information to the public, concerning the various disciplinary sanctions imposed on Plaintiff. At this point, however, as noted above, the Court is limited to the allegations of the complaint in addressing the defamation claim, and Defendants have not argued that those allegations do not adequately state a claim for defamation.

Sergeant Lujan, used a spare key to pick up the unit, without telling Plaintiff, and took it to Julian's home; (4) the unit was parked in Julian's garage, out of the view of anyone driving by the Sheriff's house; (5) Plaintiff thought his unit had been stolen, and reported that fact to Sergeant Lujan; (6) Instead of telling Plaintiff where the unit was located, and that it had not been stolen, Sergeant Lujan called Sheriff Julian for instructions; (7) Sheriff Julian told Sergeant Lujan to take a stolen-vehicle report from Plaintiff; (8) Plaintiff was not told what had happened to his unit until two days later, and was in great distress during that time; (9) Plaintiff claims his "Sam Browne" duty belt containing mace, a baton, and other equipment, was in the unit when he parked it on the street; and (10) the duty belt was not in the unit when the vehicle was returned to Plaintiff and its contents inventoried.

Based on these facts, Plaintiff claims a violation of the Fourth Amendment for the seizure of his duty belt, and appears to raise a due-process claim based on the loss of that belt. For purposes of this motion, Plaintiff does not contest the County's right to seize its own vehicle. As to the loss of the duty belt, there appear to be only two possible bases for Plaintiff's claims: first, that Defendants failed to safeguard the belt while the police unit was in Sheriff Julian's garage, thereby allowing the duty belt to be taken from the car by a third party; alternatively, that one of the Defendants deliberately stole the duty belt from the vehicle. The Court will address each of these possibilities in turn.

Most of Plaintiff's arguments are focused on the first possibility. Plaintiff contends that Sheriff Julian should have inventoried the contents of the patrol unit when it was first parked in his garage, to determine what personal property might be in the unit. If that had been done, Plaintiff maintains, the duty belt would have been returned to him. The failure to perform an inventory search of the vehicle, and to then safeguard its contents, is nothing more than negligence on the part of Sheriff Julian. There is no suggestion in the evidence that Sheriff Julian knew the patrol unit

contained personal property, and deliberately decided to allow the property to be stolen. In fact, the only evidence presented indicates the following: (1) according to Plaintiff, the duty belt was in the trunk of the patrol unit (and thus out of sight of anyone looking into or driving the unit); (2) according to Sergeant Lujan, who drove the vehicle to Sheriff Julian's home, the only personal property he noticed in the unit was a subpoena lying on the passenger seat of the unit, and he "never gave any thought" as to whether there might be other personal property in the unit; and (3) according to Sheriff Julian, he never looked inside the unit while it was parked in his garage, and did not know there was any personal property in it. *See* Pltf. Resp. to Defs.' Mot. Sum Jmt., unmarked Exh. 8, dep. of Plaintiff, p. 212; Pltf. 2d Mot. Sum. Jmt., unmarked Exh. B, dep. of Sheriff Julian, p. 7; *id.*, unmarked Exh. D, dep. of Sergeant Lujan, pp. 20-21. All of Plaintiff's arguments and evidence concerning the failure to inventory the contents of the patrol unit, therefore, raise only an allegation of negligence and fail to state a claim for a constitutional violation. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 330-32 (1986) (negligent conduct by a state official is not an unconstitutional deprivation of life, liberty, or property under the Due Process clause); *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) (deliberate or reckless intent is necessary to state a due-process claim); *Maughon v. Bibb County*, 160 F.3d 658, 660 (11th Cir. 1998) (negligent or innocent mistakes do not violate the Fourth Amendment); *Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987) (Fourth Amendment protects against unreasonable seizures, not seizures conducted in a negligent manner). Summary judgment will therefore be granted, *sua sponte*, to Defendants, to the extent Plaintiff bases his claim on Defendant Julian's failure to ensure that an inventory of the patrol unit's contents was performed after the unit was taken to Defendant Julian's home.[5]

---

[5]Defendants did not file a cross-motion for summary judgment on this issue, but did argue in the response brief that Plaintiff's negligence claims could not state a constitutional violation. Plaintiff then had an opportunity to present facts that might tend to show Sheriff Julian acted recklessly or

As noted above, the only other possible basis for Plaintiff's summary-judgment motion is that Sheriff Julian deliberately removed the duty belt from the trunk and did not return it to Plaintiff. Although it is not clear Plaintiff is actually contending this occurred, the Court will address the possible claim. The problem with this possible claim is that there is a clear issue of fact (at least) as to whether Sheriff Julian even looked in the patrol unit, let alone removed the duty belt from the trunk. In his deposition, as cited above, Sheriff Julian denied knowing there was any personal property in the unit, and denied looking in it. Summary judgment must therefore be denied to the extent Plaintiff's claim is based on a contention that Sheriff Julian deliberately stole the duty belt from the trunk of the patrol unit.[6]

---

deliberately in failing to remove all personal property from the vehicle while it was parked in his garage. No such evidence was presented. It is therefore appropriate to grant summary judgment dismissing any constitutional claims based solely on Sheriff Julian's negligent failure to conduct an inventory of the patrol unit. *See Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.*, 131 F.3d 874, 892 (10th Cir. 1997) (court may grant summary judgment *sua sponte* so long as the losing party was on notice that it needed to come forward with all of its evidence). However, the Court notes that the practice of granting summary judgment *sua sponte* is not favored. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir.2000). Therefore, should Plaintiff have any evidence that would cause the Court to reconsider this grant of summary judgment, that evidence should be presented to the Court within fifteen days, along with a motion for reconsideration.

[6]Should Plaintiff wish to press a claim that Sheriff Julian acted deliberately and took the belt from the patrol unit, Plaintiff should be aware that there is a legal obstacle to such a claim, not yet briefed by the parties, if the claim is based on the right to due process. When a state actor steals property from a citizen, and the state actor's seizure is a random act not authorized by any established procedure, there is no due-process violation if the state has provided a meaningful post-deprivation remedy for the taking of the property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). This principle has been applied to cases similar to this one, in which property is alleged to have been taken from a vehicle before, during, or after an inventory search. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985) (claim that property was stolen from vehicle during inventory search did not give rise to constitutional cause of action, because adequate state post-deprivation remedy was available in the form of a conversion lawsuit); *Mamoth v. City of Farmers Branch*, 2002 WL 255480 (N.D.Tex. 2002) (claim that $45,000 was unlawfully seized from vehicle following arrest did not state claim for civil rights violation; post-deprivation remedy of a cause of action for conversion was available to Plaintiff). It appears that a post-deprivation remedy might have been available to Plaintiff in this case, since § 41-4-12 waives immunity for a "violation of property rights" caused by a law

Defendants, in their response brief, present an argument concerning the value of the lost duty belt and its contents. They maintain the value of the property involved in this case is too small to be of constitutional significance. They also argue that a reasonable officer would not have known that the lost property was valuable enough to be protected by the constitution. Accordingly, they argue the motion for summary judgment should be denied, and they should be given qualified immunity with respect to this claim. The Court disagrees. When property is permanently taken from a citizen by a government actor, the value of the property does not affect the determination of whether a property interest exists, unless the value can truly be said to be *de minimis*. *See Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, 94 F.3d 996, 1003, n. 38 (5th Cir. 1996); *Propert v. District of Columbia*, 948 F.3d 1327, 1331 (D.C.Cir. 1991) (quoting *Price v. City of Junction, Texas*, 711 F.2d 582, 589 (5th Cir. 1983); "Whether a junk car has little or great value, it is constitutionally protected property."); *compare Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976) (catalogue taken from prisoner was of such little value that confiscation of catalogue did not implicate due process). Property worth $400 is certainly not of *de minimis* value. Even accepting Defendants' argument that half of the allegedly lost property was replaced by the County, property worth $200 is not of *de minimis* value either, especially where it is alleged to have been deliberately taken by a government actor. Qualified immunity will therefore be denied, since a reasonable officer should have known that taking property worth $400 from a citizen would violate the constitution. *See Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002) (standard for deciding qualified-immunity question is whether contours of the right are sufficiently established that a reasonable officer would understand that what he is doing violates that right).

---

enforcement officer. Unless Plaintiff can establish that he had no meaningful post-deprivation remedy under state law, he will be unable to succeed on a due-process claim based on any allegation of deliberate confiscation of his duty belt by Sheriff Julian.

There are no allegations in the complaint or anywhere in the record of this case that Defendant Carr or Defendant Perea had anything to do with the seizure of the patrol unit or the subsequent disappearance of the duty belt. The Court will therefore *sua sponte* grant summary judgment on behalf of these two Defendants as to any claim resulting from the lost belt. *See Sports Racing*.

**Defendants' Motion for Summary Judgment**

Defendants, in their initial brief, addressed the following federal claims they believed had been raised by Plaintiff: (1) a due-process claim for damage to Plaintiff's liberty interest in his reputation; (2) a due-process claim for damage to Plaintiff's campaign for sheriff; (3) a due-process claim arising out of the seizure of Plaintiff's county-issue patrol unit; and (4) a First-Amendment retaliation claim. Plaintiff's response brief discusses only two federal claims: (a) the First-Amendment retaliation claim; and (b) a due-process claim arising out of the transfer of Plaintiff from a patrol position to a position as court security officer.[7]

---

[7]The latter claim was not mentioned in Plaintiff's complaint, and the facts underlying the claim were not pled. Similarly, the claim does not appear in the initial pre-trial report filed by the parties, which guided the discovery in this case. Plaintiff has not asked to amend his complaint to include such a claim. However, the facts relied on by Plaintiff were adduced during discovery, and the Tenth Circuit has held as follows: "Issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed.R.Civ.P. 15. *See generally, Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir.1991) (a plaintiff should not be prevented from pursuing a valid claim just because he did not include it in his complaint, provided that a late shift in the case will not prejudice the other party in maintaining his defense). *See also United States ex rel. Schumer v. Hughes Aircraft Company*, 63 F.3d 1512, 1524 (9th Cir.1995) ("when a party raises a claim in materials filed in opposition to a motion for summary judgment, the district court should treat the filing as a request to amend the pleadings and should consider whether the evidence presented creates a triable issue of material fact."), *vacated on other grounds, Hughes Aircraft Company v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997)." *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790, n.9 (10th Cir. 1998). The Court therefore treats Plaintiff's argument in his response brief as a request to amend his complaint to include this claim. As discussed below, however, the request to amend will be denied because the facts presented by Plaintiff are not sufficient to state the due-process claim he has argued.

Despite Plaintiff's failure to present argument concerning the first three claims addressed by Defendants, the Court will address them briefly. The first two claims are based on the same allegations as the state-law defamation claim--that Defendants trumped up false disciplinary charges and disseminated information about his "poor" work record in order to harm his reputation and his candidacy for sheriff. As Defendants point out, in the Tenth Circuit defamation of an employee does not deprive the employee of a liberty interest, and therefore violate the due-process clause, unless the employee is terminated from his position in connection with the defamation. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1154 (10th Cir. 2001) (it is no longer enough for an employee to show that defamation foreclosed his freedom to take advantage of other employment opportunities; employee claiming deprivation of liberty interest must have been terminated incident to the alleged defamation). Furthermore, Plaintiff has not even met the burden he had under the law prior to *Stidham*. He failed to present any evidence that he had applied for other jobs but had been turned down because of the defamation allegedly inflicted upon him by Defendants. Summary judgment will be granted on the liberty-interest claim of damage to Plaintiff's reputation.

Plaintiff's due-process claim for damage to his candidacy for sheriff is also legally deficient. Defamation that harms a person's chances of winning an election is merely a state-law claim, not a federal constitutional matter. *See Flinn v. Gordon*, 775 F.2d 1551, 1553 (11th Cir. 1985); *Edwards v. Reynaud*, 463 F.Supp. 1235, 1239 (E.D.La. 1979) (public criticism of a candidate at best constitutes a state law claim for defamation, not a constitutional claim); *see also Field v. County of La Paz*, 2000 WL 714562 (9th Cir. 2000) (allegation that defendant defamed plaintiff and damaged her campaign was simply an allegation of a state-law defamation claim, and did not state a claim for constitutional defamation under § 1983). Summary judgment will be granted on this claim as well.

As to the possible claim for a due-process violation resulting from the seizure of the patrol unit, the Court finds no such claim stated or argued in the complaint, the initial pre-trial order, or Plaintiff's response brief to the motion for summary judgment. The Court therefore finds that Plaintiff has not raised such a claim, and will not address it.

**Transfer to Court Security Position:** Plaintiff's due-process claim arising out of his transfer to the court-security position is based on the following evidence, most of which is undisputed: (1) on May 8, 2001, shortly after the patrol-unit incident, Plaintiff was placed in remedial-training status; (2) the county manager recommended that this status be reviewed in 15 to 30 days; (3) Plaintiff was off-duty due to a work injury from May 8 to July 24, so was unable to participate in the remedial training; (4) starting July 24, Plaintiff did participate in the training; (5) on September 1, 2001, the remedial training was halted because Plaintiff did not have a complete duty belt (a result of the alleged theft of the duty belt from the patrol unit in May); (6) on September 18, Plaintiff's trainer wrote a memo indicating, essentially, that Plaintiff had nothing left to learn in the remedial training, but this memo was ignored by Sheriff Julian; (7) on September 24, Plaintiff had a complete duty belt and resumed the remedial training; (8) the next day, Plaintiff was placed on 30 days' administrative leave by the county manager, with pay, because he had filed a harassment complaint against his superiors and the complaint needed to be investigated; (9) on November 7, shortly after Plaintiff returned to work, he was transferred to a court security position, ostensibly because he had not completed his remedial training; and (10) the court security position is a "dead-end" position, from which no one has ever been promoted, and Sheriff Julian has no plans to move him out of that position or allow him to complete his remedial training. Plaintiff's argument is that he never received any sort of due process before he was transferred to court security. He also contends that the excuse for the transfer (that he had not completed remedial training) was merely a subterfuge, because Sheriff Julian ignored

14

the memo stating that Plaintiff had essentially learned what he needed to learn, and also has prevented Plaintiff from ever being able to officially complete the remedial training.

The above facts fail to state a due-process violation for one basic reason: Plaintiff has presented no evidence indicating he had a constitutionally protected interest in remaining a patrol officer, as opposed to a court security officer. There is no evidence that his salary or benefits changed at all as a result of his transfer. Therefore, Plaintiff is forced to rely on the assertion that he was deprived of any chance at being promoted, and on the fact that his job duties are much different and much less satisfying. As discussed below, however, Plaintiff has failed to present facts showing that either of these interests was constitutionally protected.

In order for an employee to state a due-process claim arising out of adverse actions taken by a government employer, the employee must show that the interest that was infringed on by the employer was a protected property or liberty interest. *See Lighton v. University of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000). Absent a binding provision in the employer's personnel code, or local or state law, a government employee does not have a protected interest in obtaining a promotion. *See Meyer v. City of Joplin*, 281 F.3d 759, 761-62 (8th Cir. 2002) (employee who was one of top three candidates for promotion did not have protected interest in such promotion, where employer was authorized to consider subjective factors other than success on examination when deciding who should be promoted); *Burns v. Sullivan*, 619 F.2d 99, 104 (1st Cir. 1980) (police officer did not have property right in promotion on basis of examination scores). In this case, Plaintiff has not submitted any provision of the local personnel code, or of any local or state law, which would provide him the right to a promotion if he had remained a patrol officer. Therefore, his loss of opportunity for a possible promotion in the future is not a protected property interest.

Similarly, Plaintiff has not presented any evidence tending to show that under the personnel code, or local or state law, he had a right to remain a patrol officer and could only be transferred from that position for certain specified reasons. Absent such evidence, Plaintiff has not established a protected property interest in the particular position of patrol officer. *See Lollar v. Baker*, 196 F.3d 603, 608 (5th Cir. 1999) (where Mississippi law protected only an employee's right to receive the same financial remuneration, employee had no property right in retaining same position she held; employer's transfer of employee to different position, at same rate of pay, did not implicate due-process clause).

In sum, while Plaintiff has certainly presented evidence indicating he was treated unfairly with respect to the remedial training and transfer to court security, Plaintiff has presented no evidence from a personnel code or any other governing source of law, showing that he had a right to a promotion or a right to remain a patrol officer. The due-process claim he has asserted in his response brief is therefore without merit, and his implied request to amend his complaint to add such a claim will be denied.

**First Amendment Retaliation:** Plaintiff maintains that all of the disciplinary actions taken against him were intended to retaliate against him for his candidacy for sheriff, and for telling the sheriff that employees other than Plaintiff abused their vehicle privileges. Plaintiff allegedly made both disclosures to Sheriff Julian during an argument with the Sheriff that occurred on April 10, 2001; in response, Sheriff Julian allegedly told Plaintiff he would make sure he was discredited with the public, so he would not be elected sheriff. Pltf. dep. p. 156, Exh. A, MSJ. In analyzing a free-speech retaliation claim brought by a public employee, the Court must apply the so-called *Pickering* balancing test. *Kent v. Martin*, 252 F.3d 1141, 1143 (10th Cir. 2001). Under that four-part test, the following factors are considered: (1) whether the speech in question involved a matter of public

concern; (2) whether the employee's interest in the speech outweighed the government employer's interest in having an efficient and effective workplace; (3) whether the speech was a substantial factor driving the allegedly retaliatory actions; and (4) if so, whether the employer can show that it would have taken the same actions against the employee even in the absence of the protected speech. *Id.* The first two questions are questions of law for the Court, while the latter two are questions of fact for the jury. *Id.*

Defendants' first argument is that Plaintiff's candidacy for sheriff was not a matter of public concern and that his right to run for office is not protected by the First Amendment, because he is a public employee. This argument is contrary to Tenth Circuit authority. *See id.*, 252 F.3d at 1144 (a public employee's candidacy for political office undoubtedly relates to matters of public concern); *Jantzen v. Hawkins*, 188 F.3d 1247, 1257 (10th Cir. 1999) (same). The Court will therefore find that Plaintiff's candidacy, and his statements about that candidacy to Sheriff Julian, involved matters of public concern.[8]

In addressing the second factor, the Court is required to examine the allegedly retaliatory acts performed by Defendants and determine whether they were justified as attempts to maintain an efficient and effective workplace, even if they were done in retaliation for Plaintiff's candidacy. Two of the most common forms of retaliation against a public employee who runs for office are to fire the employee, or require the employee to take a leave of absence. Courts have upheld such actions where

---

[8]The Court notes Defendants' reliance on *Carver v. Dennis*, 104 F.3d 847 (6th Cir. 1997), in support of their assertion that Plaintiff's candidacy was not protected by the First Amendment. To the extent *Carver* can be read to say this, it is inconsistent with Tenth Circuit authority, and the Tenth Circuit cases are binding on this Court. In addition, Defendants relied on *Jantzen* for the same proposition. Defendants erred in doing so. While *Jantzen* does hold that an individual's candidacy is not protected by the freedom-of-association prong of the First Amendment, *Jantzen* then proceeds to hold that such candidacy is protected by the freedom-of-speech prong of that Amendment. *Compare* 188 F.3d at 1251-52, cited by Defendants, *with* 188 F.3d at 1257.

the employer has shown that an employee's candidacy is or will be disruptive to the office. *See, e.g., Jantzen*, 188 F.3d at 1258 (evidence was presented that when employee runs for office against his boss, great disruption results in the workplace; so firing employee for insisting on running against boss did not violate First Amendment). In this case, however, Plaintiff was not the only employee of the Sheriff's Department who was running for sheriff, and he was not running against Sheriff Julian. There is no evidence that Lieutenant Hall, who was also running for sheriff, suffered retaliation as a result. Defendants cannot therefore argue that it was necessary to restrict Plaintiff's candidacy to maintain an efficient workplace.

Furthermore, the retaliatory actions alleged by Plaintiff do not appear designed to promote efficiency in the workplace. He has presented evidence of the following: (1) on the day he argued with Sheriff Julian and said he was a candidate for sheriff, Defendant Perea served him with a notice of discipline arising out of an incident that had occurred over two months previously; (2) this notice made it appear that Plaintiff was being placed on a three-day suspension, effective immediately; (3) three weeks after the argument with Sheriff Julian, Plaintiff's patrol unit was confiscated and hidden in the Sheriff's garage; Plaintiff was not told the vehicle was in the Sheriff's custody, and for two days was allowed to believe it had been stolen; (4) on May 16, one month and a week after the argument, the Sheriff wrote a letter recommending that Plaintiff be terminated because his windshield had been cracked and there was evidence the windshield had been struck from the inside, not the outside as Plaintiff had stated; the request to terminate Plaintiff was not approved by the County Manager because of insufficient proof; (5) on May 11, less than a month after the argument, Plaintiff was placed on remedial training that, according to the County Manager, would be expected to last from 15 to 30 days; (6) Plaintiff was never taken off remedial-training status, and once his duty belt was fully equipped so there was no more reason to extend his training, he was transferred to the court

security position, from which no one has ever been promoted and where he would have no opportunity to ever complete the remedial training; and (7) in December 2001, Plaintiff was suspended for thirty days for not having a complete duty belt; this suspension was overturned by a hearing officer, who found the County was at least partly at fault for Plaintiff's lack of a complete duty belt.[9] A fact-finder viewing this evidence could find that the County's interest in efficiency and effectiveness was not being served by treatment that, viewed from Plaintiff's perspective, was nothing more than harassment. Plaintiff's interest in running as a candidate for sheriff certainly outweighed Sheriff Julian's interest in harassing Plaintiff. *See, e.g., Coady v. Steil*, 187 F.3d 727, 734 (7th Cir. 1999) (government official cannot harass a subordinate employee because of that individual's First-Amendment-protected political activities).

Defendants also argue that summary judgment should be granted on this claim on the basis of the third and fourth *Pickering* factors, contending there is no evidence that Plaintiff's candidacy was a substantial motivating force behind the actions described above, and there is ample evidence that Defendants would have taken the same actions regardless of Plaintiff's candidacy. As noted above, the Tenth Circuit has held that these two factors are questions for the jury, not questions of law to be resolved by the Court. That is especially true in this case, where there is conflicting evidence regarding the true facts and Sheriff Julian's true motivations for his actions. One example will suffice. The timing of the three-day suspension imposed, or proposed,[10] on April 10, 2001, is

---

[9]Perea dep. pp. 5-6, Exh. J, MSJ; 4/10/01 counseling form, exhibit to Perea dep.; Plaintiff affidavit, unmarked Exh. A, Pltf. 2d MSJ; Julian dep., pp. 4-7, 10-11, *id.*; Fernandez dep. pp. 40-44, 52, unmarked Exh. 11, Pltf. Resp. to MSJ; Julian affid., Exh. C, MSJ; Julian dep., pp. 87-98, unmarked Exh. 7, Pltf. Resp. to MSJ; Hall dep., p. 74, unmarked Exh. 12, *id.*; Hearing Officer decision, Exh. 4, *id.*

[10]The Court recognizes that Defendants contend the suspension was never imposed, but that Plaintiff merely took it upon himself to serve the suspension to obtain extra days off. However, the Court has reviewed the notice of discipline, and it can be interpreted as immediately imposing a three-

significant. The incident giving rise to the discipline occurred on January 31; nothing was done about it until after Plaintiff's announcement to Sheriff Julian that he was a candidate for sheriff. It is important to note that Sheriff Julian admitted that he has endorsed Lieutenant Hall for sheriff, giving him a reason to be displeased about Plaintiff's candidacy. Julian dep. p. 99, unmarked Exh. 7, Pltf. Resp. to MSJ. Viewed in the light most favorable to Plaintiff, a fact-finder could infer that the suspension was a reaction to Plaintiff's confirmation that he was running for sheriff. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 597 (10th Cir. 1994) (layoffs occurring less than two months after protected activity have been held sufficiently close in time to be probative of retaliatory motive to withstand summary judgment).

Defendants claim entitlement to qualified immunity on this First Amendment retaliation claim, arguing there were good business reasons for every alleged act of retaliation. That argument fails because a defendant's motivation for his actions is a fact question to be determined by the jury. As noted above, there are sufficient factual disputes concerning Sheriff Julian's motivation to allow the issue to be submitted to a fact-finder. The request for qualified immunity will therefore be denied.

One point must be made as to the appropriate defendant for this claim. There appears to be no evidence that Defendant Carr or Defendant Perea knew of Plaintiff's candidacy at the time they were involved in the foregoing events. Both denied knowing Plaintiff was a candidate until late 2001 or early 2002, long after any events that have been brought up in the depositions or in the complaint. Carr affid., Perea affid., Exhs. F and I, MSJ. Furthermore, Carr's involvement in this case has to do

---

day suspension, rather than as merely a proposal. There is thus a question of fact as to whether the suspension was actually imposed or not. Furthermore, the significance of handing the notice to Plaintiff on April 10 is not diminished whether it was a proposal or an actual suspension; it is still disciplinary action.

with Plaintiff's failure to timely file a fatality report following a traffic accident, which occurred in June 2000. This is long before the April 10, 2001 argument between Sheriff Julian and Plaintiff. As to Perea, he is a defendant only because of the three-day suspension proposal or notice that he served on Plaintiff, on the orders of his superior, on April 10, 2001. There is no evidence he knew of Plaintiff's argument with the Sheriff at the time he delivered the notice, and no evidence he knew the contents of that argument. Since there is no evidence that either Carr or Perea knew of Plaintiff's candidacy at the time they took the actions complained of by Plaintiff, there is no evidence they acted in retaliation for that candidacy. *See O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir.1993) (action cannot be in retaliation for protected conduct if actor had no knowledge of protected conduct at time of action); *cf. Ramirez*, 41 F.3d at 596 (10th Cir.1994)(proof employer knew of protected activity, plus close proximity in time of adverse employment action, sufficiently probative of retaliatory motive). Summary judgment will therefore be granted to Defendants Carr and Perea on the First Amendment retaliation claim.

Based on the foregoing, summary judgment will be denied on this claim as to Sheriff Julian, but will be granted as to Defendants Carr and Perea.[11]

**Conclusion**

In accordance with the foregoing discussion, only the following claims remain in this case at this time: (1) the state-law defamation claim, as limited by this opinion; (2) the constitutional claims based on an alleged deliberate taking of the duty belt, against Defendant Julian only; and (3) the First

---

[11]Given this ruling, the Court need not address the issue of whether Plaintiff's complaints about other officers misusing their official vehicles constituted protected speech. However, it is likely the Court would find they did not concern a matter of public interest. It is clear from the evidence submitted to date that Plaintiff was complaining about unequal and discriminatory treatment regarding his own use of his patrol unit. As such, he was speaking as an employee rather than a citizen, and his comments were not protected by the First Amendment. *See Craven v. University of Colorado Hosp. Auth.*, 260 F.3d 1218, 1227 (10th Cir. 2001).

Amendment retaliation claim, against Defendant Julian only. Summary judgment is granted as to all other claims Plaintiff is attempting to raise, including any due-process claim arising out of damage to his reputation or his campaign for sheriff, any due-process claim arising out of his remedial-training situation or his transfer to the court-security position, any First Amendment claims against Defendants Carr or Perea, and any claims against Carr or Perea arising out of the alleged loss of the duty belt.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Plaintiff's second motion for summary judgment (Doc. 67) be, and hereby is, DENIED; Defendants' motion to dismiss Plaintiff's defamation or other state-law claim (Doc. 34) be, and hereby is, GRANTED in part and DENIED in part; and Defendants' motion for summary judgment (Doc. 65) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 8th day of August, 2002.


BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Hannah B. Best
Patrick L. Fogel

**For Defendants**:

Sean Olivas
Melanie L. Frassanito